ALICE C. DEAN v. HOME BENEFICIAL LIFE INSURANCE COMPANY.

(Filed 16 October, 1957.)

**1. Insurance § 30f—**

The beneficiary's introduction in evidence of insured's application for reinstatement, containing a signed statement that he was in good health, etc., together with testimony of insurer's agents, one that he saw insured sign the application and recommended him as a first class risk and the other that he wrote "O.K." on the application, is sufficient to make out a *prima facie* showing of good health and does not establish as a matter of law, so as to justify nonsuit, insurer's affirmative defense of misrepresentation of health.

**2. Trial § 22a—**

On motion to nonsuit, the evidence must be interpreted in the light most favorable to plaintiff, giving her the benefit of every legitimate inference that may be drawn therefrom.

DEAN *v.* INSURANCE CO.

**3. Trial § 22c—**

>   On motion to nonsuit, conflicts in the evidence must be resolved in plaintiff's favor.

**4. Insurance § 30f—**

>   Plaintiff beneficiary's evidence tended to show that applications for reinstatement were acted on by insurer within a ten day period and that if an application were rejected a rejection slip was sent to the field agent within that time, that insured died ten days after signing application for reinstatement, which application was received by insurer in due course, and that proof of death forms were given the beneficiary by the field agent some eighteen days after the application was made, together with other evidence in the case, *is held* sufficient to justify the inference that the application for reinstatement had been approved at the home office of insurer prior to the death of insured.

APPEAL by plaintiff from *Rudisill, J.,* at February Term, 1957, of GASTON.

*Ernest R. Warren and Hugh W. Johnston for plaintiff, appellant.*
*Porter B. Byrum for defendant, appellee.*

JOHNSON, J.   Civil action on policy of life insurance.   The court below allowed the defendant's motion for nonsuit at the close of the plaintiff's evidence.   The appeal tests the correctness of this ruling.

It is admitted that the policy sued on was duly issued by the defendant, insuring the life of Gordon C. Dean in the amount of $500, and that his wife, the plaintiff herein, was the beneficiary.   It is further admitted that the policy lapsed for nonpayment of premiums at the end of the thirty-day grace period on or about 23 May, 1956.

On 14 June, 1956, the insured signed application for reinstatement of the policy.   The application was made on a written form furnished by the insurance company and filled out by its agent, S. L. Ferrell.   The insured paid agent Ferrell all past due premiums and also future premiums for two weeks, up to 2 July, 1956.   The premium receipt issued by agent Ferrell recites that the premiums were received without obligation on the part of the insurance company until the reinstatement application "is received and approved by the Company at its Home Office," and further that if the "application is rejected, this deposit will be returned . . ."

The insured died 24 June, 1956, before receiving notice whether the company at its home office had approved or rejected the application.

The widow, beneficiary, brings this action, alleging that the application had been approved and that the policy was in force at the time of the death of her husband.   The defendant denies that the application was approved and contends that it was rejected.

23 — 246

Decision turns on whether the plaintiff's evidence was sufficient to carry the case to the jury on the question of reinstatement.

The crucial phases of the evidence may be summarized as follows: The application for reinstatement was made on a form card. The card contains numerous blank spaces printed on each side. The blank spaces contain in small print requests for factual information respecting the lapsed policy, *e.g.*, number, date, and type of the policy; name, age, and address of the insured; questions concerning the health of the insured; date of lapse, etc. The application card also contains this statement, printed in bold type on its face:

> "The above described policy having lapsed, application is hereby made for revival of same. To induce the company to revive the policy the undersigned does hereby represent and declare that the person heretofore insured by the above described policy has not been sick or injured, nor has said person consulted or been prescribed for by a physician since said policy was lapsed, except as stated above. The undersigned understands and agrees that all arrears deposited with the company at this time on account of the above policy are held subject to the application for revival being officially approved at the home office of the company, and that if this application is declined by the company, said arrears are to be refunded. The undersigned also expressly agrees that no liability shall exist on the part of the company until this application for revival has been so approved and accepted and in accordance with the terms of the policy."

The application for reinstatement signed by the insured, Gordon C. Dean, contained statements representing that he "had not been sick or injured since the policy lapsed" and that the condition of his health was "good." Agent Ferrell signed the application card on the back certifying that he saw the insured at the time the "application was written," that he questioned him concerning his health, and that he recommended the insured "as a first class risk." J. M. Smith, the company's Staff Superintendent at the Gastonia field office, testified as an adverse witness for the plaintiff. He said he wrote his "O.K." on the application card in red ink and initialed it "J.M.S." Superintendent Smith further testified that "normally when an agent represents somebody as a first class risk" the application for reinstatement "goes through with no complications."

The foregoing statements of the insured, representing that he was in good health, together with the supporting statements of agents Ferrell and Smith, constitute *prima facie* evidence of sound health and insurability of the insured within the requirements laid down by the com-

pany for reinstatement. This being so, in dealing, as we are here, solely with a question of nonsuit, we need not consider the defendant's plea by way of affirmative defense that the insured was sick and under the care of a physician when the application for reinstatement was made, nor need we consider or discuss the testimony in support of the affirmative defense elicited from the plaintiff on cross-examination. It suffices to note that in view of the *prima facie* showing of good health disclosed in the insured's application, the plaintiff by her own testimony has not established as a matter of law the defendant's affirmative defense. See *Hedgecock v. Ins. Co.*, 212 N.C. 638, 194 S.E. 86.

Adverting further to the contents of the reinstatement card, it is noted that on the right side of the face of the card there is a blocked-off space with heavy print indicating "Home Office Use Only." Under this heading and in the left section of the blank is printed in small type the word "weeks" and in the right section of the space is printed the word "arrears." The figure "9" appears in the left section of this space. This figure "9," which the plaintiff contends was written in the blank after the application reached the home office, is referred to and commented on in the testimony of J. M. Smith hereinafter set out. The following memoranda appearing on the margin of the application card (placed there, as the plaintiff contends, in the home office) are also referred to in the testimony of J. M. Smith: "July—2—1956" on the left margin of the card; and the letter "a" written near the right-hand bottom margin.

J. M. Smith, Staff Superintendent of the defendant, testifying as to the procedure followed in processing a reinstatement application, said: "The agent turns it in at the Gastonia office. We mail it to Richmond. . . . This blank here (pointing to one of the blanks on the application for reinstatement) says 'For Home Office Use Only.' We don't fill any of that out. This section here where it says 'arrears,' I imagine that means how many weeks in arrears the policy is. . . . I don't know anything about that particular, because we don't never fill it out. That spot you pointed to says, 'For Home Office Use Only.' I'm not in the Home Office, I'm in the field office. . . . When we sent (send) the application off they do not send it back to us. . . . if it's rejected, they send us a small slip; if they don't, they put it on a regular form when they send it down and issue it into a life register. . . . I recognize those initials on the application card. That's my writing. That red mark there, 'O.K., J.M.S.' I check it to see if the thing is completely filled out so there won't be no more delay in sending it back. That other writing is not mine. That 'July 2, 1956' is not mine. I did not put that small 'a' on the card. . . . That section says 'Home Office Use.' It's got 'weeks—9' in there. . . . I imagine that would be the number of weeks in arrears that Mr. Dean's policy would have been calling for

and two in advance. . . . Yes, she paid eleven weeks. That takes you through July 2, 1956. They paid it on June 14th, and that was for the week June 18th. . . . And it was nine weeks in arrears. And he called for two weeks in advance, so if it came back in his account, it would not be in arrears on his book. That's the usual procedure when reviving an insurance policy—to collect two weeks in advance, so when it comes down it will not be in arrears. The contract says it should be a week in advance. . . . To the best of my knowledge Mr. Dean died on Sunday. I was down at his house sometime the following week. . . . I went down there with them papers and told her to go ahead and fill them out and if it was approved the Home Office would definitely pay the claim; but it had never been approved by the Home Office. . . . When I say it had never been approved by the Home Office I don't know that. . . . It was rejected. It never came in Mr. Ferrell's account. It didn't have time to go through the channels to get back on the agent's book."

The plaintiff, Alice C. Dean, testified in part: "The insurance got behind. . . . Mr. Ferrell didn't say much. . . . He just told me that whenever four weeks were up, my policy would lapse. . . . After I got some money, Mr. Ferrell dropped by again. . . . He asked me about the approval (revival) and I gave him the money and my husband signed the approval (application for reinstatement) card. . . . The next time I saw Mr. Ferrell was after my husband died, . . . that would be two weeks later. . . . I was away (from home) the first week and the next week was two weeks later and my husband had passed away and I told him that I'd lost my husband. This was the week my husband died. And Mr. Ferrell looked at me in amazement. He said 'I never heard of it.' I said 'Yes, he died the 24th.' And he said, well, . . . he'd go back and see about making arrangements to pay off. The next day there were some more insurance men came down there. . . . I don't believe Mr. Ferrell was with them. . . . there were two of them. . . . I see one of the men . . . who came down after my husband died. That black-headed fellow right yonder is one of them, and I believe that that other fellow is the other one. . . . And they asked concerning about it and they said they would pay off, so they went back. . . . They said they would go back and fix up the application papers and everything. They brought me a paper to have filled out and all. . . . And then on Friday Mr. Ferrell came down and said they wouldn't. . . . he said he'd bring the $12.98 check the next day. . . . I never did take the check."

In deciding whether the evidence is sufficient to withstand the defendant's motion for nonsuit we are required to accept and interpret the evidence in the light most favorable to the plaintiff and to give to her the benefit of every legitimate inference that may be drawn therefrom.

*Cozart v. Hudson,* 239 N.C. 279, 78 S.E. 2d 881. "If there is conflict in the evidence, or if it is susceptible of more than one interpretation, these must be resolved in the plaintiff's favor." *Poindexter v. First National Bank of Winston-Salem,* 244 N.C. 191, 92 S.E. 2d 773.

In applying this formula to the case at hand, these crucial phases of the evidence come into focus: (1) The testimony of Staff Superintendent Smith, explaining the memoranda and writings appearing on the margins of the application for reinstatement and in the space marked for "Home Office Use Only," justifies the inferences that the application was received in due course and was acted upon in the home office. (2) Superintendent Smith said the procedure followed at the home office after acting on an application for reinstatement was, in case of rejection, that a slip to that effect would be sent down from the home office to the field office; whereas, if the application was approved, the record of the policy would go "into a life register," and come down from the home office in the account of the field agent. (3) While Superintendent Smith, testifying as an adverse witness, said it usually takes from ten to fourteen days for an application to be approved, and for that reason it was customary for the canvassing agent in taking a reinstatement application to collect advance premiums for two weeks, so that the policy would not be in arrears again when approval came down from the home office, nevertheless witness Smith said *the insurance policy provides for collection of an advance premium of only one week.* This policy provision indicates that the insurance company contemplated that it should take only one week in which to process an application for reinstatement. This being so, the policy provision supports the plaintiff's contention that her husband's application was acted upon and approved in the home office during the 10-day period intervening between the date the application was made and his death. The contention finds further support in the circumstance that no notice of rejection appears to have come down to the field office or to agent Ferrell before he called at the Dean home after Dean's death. Ferrell learned then for the first time of the death of the insured and told Mrs. Dean he would go back and make arrangements about paying off. It was after this, according to Superintendent Smith's testimony, that he, Smith, took the proof of death papers out to the home for the widow to execute. According to her testimony, this was the second week after the death of the insured; according to Smith's testimony, it was the first week thereafter. Viewed in the light most favorable to the plaintiff, the claim papers were given to her some eighteen days after the application for reinstatement was made. From this line of testimony it is inferable that no rejection notice had come down from the home office, else Superintendent Smith would have so advised the widow rather than assist her in filing claim for the policy benefits. Further-

more, agent Ferrell's call at the home after Dean's death, when considered in the light of Ferrell's statement to Mrs. Dean that he did not know of her husband's death, is corroborative of other evidence tending to show that the policy had been reinstated at the home office and was back in Ferrell's debit account, and that Ferrell was calling at the Dean home to make a regular premium collection. This is also borne out inferentially by the testimony of Superintendent Smith.

The foregoing facts and circumstances, when considered with other evidence favorable to the plaintiff, is sufficient to justify the inference that the application for reinstatement had been approved at the home office of the insurance company before the death of the insured.

In this view of the case it is not necessary to discuss whether the allegations of the complaint are broad enough to put to test the principle that where death of the insured occurs after the lapse of a reasonable period of time for consideration of a reinstatement application, but before formal approval or rejection thereof, the unreasonable delay operates as an estoppel or waiver entitling the beneficiary to recover. See *Apostle v. Acacia Mutual Life Ins. Co.*, 208 N.C. 95, 179 S.E. 444; *Trust Co. v. Ins. Co.*, 199 N.C. 465, 154 S.E. 743; 29 Am. Jur., Insurance, Sections 271 and 272; Annotations: 105 A.L.R. 486; 164 A.L.R. 1057.

The judgment below is

Reversed.